MORRISON *et al. v.* MILLER *et al.*[1]

(*Circuit Court, S. D. New York.* June 20, 1888.)

1. CUSTOMS DUTIES—VALUATION—SILK SPOT AND DOTTED NETS.
   Silk spot nets and dotted nets are dutiable at 60 per cent. *ad valorem,* and not at 50 per cent. *ad valorem,* under section 8 of the act of June 30, 1864.

2. SAME—STATUTES—CONSTRUCTION—COMMERCIAL MEANING.
   In order to determine the commercial meaning of a term in tariff acts, it is not the meaning used in transactions between the retail dealer on the one side and the individual purchaser at retail on the other that is to be considered; but the meaning used between parties who are, on both sides of the transaction, engaged in that particular occupation as the business of their lives.

(*Syllabus by the Court.*)

At Law.

Action by George A. Morrison and others against Charles E. Miller and others, as executors of Chester A. Arthur, collector of customs, to recover customs paid. The plaintiffs, Morrison, Herrmann & Co., imported into the port of New York in August, September, and October, 1873, certain nets made of silk and of silk and cotton; the silk in the latter being the component material of chief value. They were classified for duty at 60 per cent. *ad valorem,* under the enumerating clause of section 8 of the act of June 30, 1864. The plaintiffs, on the other hand, claimed that the rate they should properly bear was but 50 per centum *ad valorem,* under the last clause of the same section, imposing that rate upon "all manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for;" and brought the action to recover the difference between 50 and 60 per cent. All further facts appear in the charge.

*Edward Hartley* and *Benjamin Barker, Jr.,* for plaintiffs.

*Stephen A. Walker,* U. S. Atty., and *Macgrane Coxe,* Asst. U. S. Atty., for defendants.

LACOMBE, J., (*charging jury.*) These goods in suit are covered concededly by one or the other of two clauses in the tariff act. The one clause contains an enumeration of a great many articles, made of silk, as follows: "Silk vestings, pongees, shawls, scarfs, mantillas, pelerines, handkerchiefs, veils, laces, shirts, drawers, bonnets, hats, caps, turbans, chemisettes, hose, mitts, aprons, stockings, gloves, suspenders, watch-chains, webbing, braids, fringes, galloons, tassels, cords, and trimmings: sixty per centum *ad valorem.*" The other is: "Manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for: fifty per centum *ad valorem.*" First, as you will perceive, congress enumerated with considerable exhaustiveness articles known to it and known to be made of silk, and affixed to them a duty of 60 per cent.; and then they enacted a clause covering any silk article not pro-

---

[1] Publication delayed by failure to obtain copy of opinion at time of delivery.

vided for in the first clause, and to that second class they affixed a duty of 50 per cent. In order to recover, the plaintiff must satisfy you by a fair preponderance of proof that the articles here are not included at all in the enumeration of the first clause, which I have read,—that they are not either veils, laces, or webbing. The question, then, to be determined in the first place is as to the sense in which congress has used this language. We all, in common speech and in common writing, repeatedly use words to express things. If we were challenged as to what they meant, or if some one who heard what was said, or read what was written, wanted to know what was meant, we would appeal at once to our general knowledge of the received use of the word in the English language, and, if such general knowledge were not sufficient to answer the purpose, we would turn to a standard dictionary to find out what the word meant. Let us first apply this rule to the word "laces." "Lace" is defined by Webster as being "a fabric of fine threads of linen, silk, or cotton, interwoven in a net, and often ornamented with figures; a delicate tissue of thread." Now, it is plain upon all the evidence, and even without the evidence upon an inspection of the goods, that they are covered by that term; and, were it not for another rule of interpretation which the courts apply to tariff acts, there would be no question at all for you here. This other rule, however, may be thus stated: Inasmuch as the tariff acts deal with imports, and are concerned with matters of trade and commerce; and inasmuch as merchants and importers quite frequently distort the original meanings of words, either by expanding them, or by restricting them, so that in the trade they mean not precisely what they do in common speech, it is assumed that congress, when dealing with trade, uses the technical words of trade with the same meaning that the trade uses them. The plaintiffs, in order to take themselves out of the operation of this first clause, containing the long enumeration of articles, undertake to show that by an application of this principle these nets in controversy are taken out of the enumeration, and are no longer to be covered by the word "laces." They have introduced a great deal of testimony, which is not disputed at all by the other side. The witnesses for plaintiff and defendant alike agree that these goods are universally known as "nets," as "spot nets," and as "dotted net." That, however, is not all that the plaintiff must do. To illustrate: Wheat is a grain; and no amount of testimony that winter wheat was never bought and sold in trade by any other name than "winter wheat,"—that that was the only name that was used with regard to it, and that it was never known as grain in trade,—would take it out from a classification of "grains," unless it was also shown that the word "grain" had been distorted from its natural meaning, and was used by the trade in a restricted meaning, covering cereals other than wheat. So here, in order to take this class of goods, which, under the definition in the dictionary, is covered by the word "laces," out of that class of goods, he must satisfy you by a preponderance of proof that the word "laces" or "silk laces" (which are the precise words used here) at the time of the passage of this act had, in trade and commerce in this country, a particular technical trade meaning, and that that particular

trade meaning excluded nets. Unless he has satisfied you of that, he is not entitled to recover. I shall not undertake to recite what the evidence is upon that subject. You have heard it, and are entirely competent, and it is your peculiar function, to weigh the testimony and evidence of the respective witnesses; and I have no doubt that exactly what they have said is as present to your mind as it is upon the notes which I have here. The question, then, which you have to decide is simply this: Had the words "silk laces" a definite trade meaning, different from its meaning in the ordinary uses of the English language as spoken here when congress passed these acts? If you arrive at the conclusion that it had, then, as so used, did it exclude "nets?" If you answer both those questions in the affirmative, your verdict must be for the plaintiff. If you cannot or do not answer both of those questions in the affirmative, then your verdict must be for the defendant.

I have had several requests to charge passed to me by the plaintiff. The first three I decline to charge, other than as parts of them are already charged. The fourth is this:

"That the opinion of witnesses as to whether or not laces or nets are the same commercial article, must be confined to the business of buying and selling and dealing with them as articles of commerce, and considerations derived from sources unconnected with the business of buying and selling, or trade, are of no value in determining that question."

I so charge you. That is to say, when we want to find out what the meaning of a word is generally, we appeal to our own knowledge of the English language, or, if we find that that fails us, we go to the dictionary; but if we want to find a specific trade meaning, we obtain that trade meaning from testimony of those who are in the trade, and from the knowledge that they have acquired by buying, selling, and dealing.

*Mr. Coxe.* I ask your honor to charge the jury that in so considering trade terms they shall consider the terms as used by importers and large dealers, and not as used by the retail dealers on the one hand and the individual purchasers at retail on the other.

*The Court.* It is not the small retail trade—where the tradesmen on the one side meets on the other with the individual buyer, who knows nothing about the trade at large—that you are to consider; it is trade as conducted between parties who are, on both sides of the transaction, engaged in that particular occupation as the business of their lives.

The jury then retired, and subsequently rendered a verdict for the defendant.